Filed 3/18/26  P. v. Rajagopal CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GOPI RAJAGOPAL,<br><br>    Defendant and Appellant. | F089095<br><br>(Super. Ct. No. CR-22-011456)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Saul Garcia, Judge.

Matthew A. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Peña, J. and Harrell, J.

A jury convicted defendant Gopi Rajagopal of criminal threats (Pen. Code, § 422, subd. (a)).[1] Defendant's appellate counsel makes no claim of error and requests our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436. (See also *In re Kevin S.* (2003) 113 Cal.App.4th 97.) Counsel filed an opening brief that sets forth the relevant facts of the case. Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days elapsed, and we received no communication from him. Finding no arguable error that would result in a disposition more favorable to defendant, we affirm the judgment.

The following is a brief description of the facts and procedural history of the case. (See *People v. Kelly* (2006) 40 Cal.4th 106, 110, 124.)

On October 24, 2022, Marissa V. was walking her dog near her Modesto residence. As she turned a corner in an alleyway, Marissa saw defendant walking up the street. As he walked towards her, defendant was very aggressive and yelled vulgar things such as, "[G]o sit on the N word[']s D."[2] Marissa continued walking to her home, and defendant followed her onto the porch, continuing to yell the same things. Marissa, feeling threatened, asked defendant to leave and shoved him at least two times when he refused. He did not leave and repeated several times that he knew where she lived and going to kill her and chop her into pieces. Marissa called 911, but defendant did not leave, he walked up and down the street while he continued to yell the same things. Marissa was frightened because defendant did not leave even though police were on their way and because he told her he was on parole, and she did not know what crime he had previously committed.

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Marissa clarified that defendant told her "to sit on a nigger's dick."

Approximately 15 or 20 minutes after the first call, Marissa called 911 again because she believed defendant would really do something. For approximately 40 minutes, defendant continuously repeated the statements and said that he was not going to leave, which continued to frighten Marissa. Defendant became quiet when police arrived, but Marissa's whole body was shaking and quivering.

Defendant's actions affected Marissa even after the events. She installed cameras where she lives, no longer walks in her neighborhood, has trouble sleeping, and cries when discussing the incident. Marissa even thought about moving because defendant knows where she lives and threatened her multiple times.

Marissa lived with her mother, Sara G., who testified that she was in the backyard when she heard her daughter and a man using vulgar language engaged in a loud conversation. Sara walked to the front yard and saw Marissa on the porch, where defendant followed her. Defendant said that he wanted Marissa to be raped by a black man. He also said that he would cut Marissa into pieces and no one would find her. Sara saw Marissa very scared and shaking. Then defendant yelled at both Sara and Marissa, saying that he would bring people to hurt them both. Sara heard defendant ask a passing motorist for a gun.

The District Attorney of Stanislaus County filed an information on June 15, 2023, charging defendant with threatening to commit a crime (§ 422, subd. (a)) and alleging that he had suffered a prior strike conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12)[3] and a prior serious felony conviction (§ 667, subd. (a)). Several aggravated sentencing circumstances were also alleged (Cal. Rules of Court, rule 4.421(b)(2), (3), (4)).

On December 6, 2022, the trial court suspended criminal proceedings and appointed an expert to examine defendant's mental competency but subsequently found

---

[3]     Defendant was convicted of threatening to commit a crime (§ 422, subd. (a)).

defendant competent to stand trial. The trial court suspended criminal proceedings and appointed an expert to examine defendant's mental competency twice more, on September 21, 2023, and January 9, 2024, but subsequently found defendant competent to stand trial and reinstated criminal proceedings on October 19, 2023, and February 7, 2024, respectively.

Defendant requested *Marsden*[4] hearings on March 23, 2023, January 9, 2024, and May 15, 2024, which the trial court denied after conducting hearings.

Defendant's jury trial commenced on April 2, 2024, but ended in a mistrial on April 5, 2024. On May 15, 2024, the trial court once again suspended criminal proceedings and appointed an expert to examine defendant's mental competency but subsequently reinstated criminal proceedings on July 16, 2024, after the trial court found defendant competent to stand trial.

The jury convicted defendant of the sole count in the amended information on November 22, 2024. After defendant waived his right to a jury trial on the prior felony conviction allegations, the court found them true. The court also found true the aggravating sentencing circumstances.

Defendant filed motions to reduce his conviction to a misdemeanor and for a new trial, a statement in mitigation requesting probation, and an invitation to strike his prior conviction. On February 11, 2025, the trial court denied defendant's motions for a new trial and to reduce his conviction to a misdemeanor, his request for probation, and his invitation to strike his prior serious felony conviction for purposes of Three Strikes sentencing. The court did, however, grant defendant's request to strike the five-year enhancement pursuant to section 667, subdivision (a). The court sentenced defendant to the middle term of two years, doubled to four years due to his prior serious felony

---

[4]     *People v. Marsden* (1970) 2 Cal.3d 118.

4.

conviction, and ordered him to pay victim restitution (§ 1202.4, subd. (f)) and $300 restitution and parole revocation restitution fines ( 1202.4, subd. (b), 1202.45).

Defendant filed a timely notice of appeal on February 24, 2025.

Having undertaken an examination of the entire record, we find no evidence of ineffective assistance of counsel or any other arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.